<u>**NOT FOR PUBLICATION**</u>

**FILED**

JAMES J. WALDRON, CLERK

**OCTOBER 5, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  <u>s/ Ronnie Plasner,</u> DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**NATHAN AND MIRIAM BARNERT MEMORIAL HOSPITAL ASSOCIATION d/b/a BARNERT HOSPITAL,**<br><br>Debtor.<br><br>**NATHAN AND MIRIAM BARNERT MEMORIAL HOSPITAL ASSOCIATION d/b/a BARNERT HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**ONWARD HEALTHCARE, INC.,**<br><br>Defendant. | Case No.:  07-21631  (DHS)<br><br>Adv. No.:  07-02261  (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J. |

**OPINION**

**APPEARANCES:**


**McCARTER & ENGLISH, LLP**
David J. Adler, Esq.
Joseph Lubertazzi, Jr., Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
***Counsel for Plaintiff***

**BALLARD SPAHR ANDREWS & INGERSOLL, LLP**
Dean C. Waldt, Esq.
Michael E. Brown, Esq.
Plaza 1000 – Suite 500
Main Street
Voorhees, New Jersey 08043
***Counsel for Defendant***

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

Before the Court are dueling motions for summary judgment. On October 24, 2007, Nathan

and Miriam Barnert Memorial Hospital Association d/b/a Barnert Hospital (hereinafter "Debtor"

or "Plaintiff") commenced an adversary proceeding against Onward Healthcare, Inc. ("Onward" or

"Defendant") in a three count complaint to avoid a  preferential transfer pursuant to section 547(b)

and section 550 of the Bankruptcy Code.  The Debtor filed the instant motion for summary judgment

arguing that a wire transfer of $192,398.69 to the Defendant constitutes a voidable preferential

transfer because it satisfies the statutory requirements of section 547(b).  The Defendant filed

opposition to the Plaintiff's motion and a cross-motion for summary judgment.  The Defendant

maintains the Debtor has not proven the requirements of section 547(b) specifically that: (i) the wire

transfer was not a transfer of the Plaintiff's property; (ii) the wire transfer was not on account of an

antecedent debt; (iii) the Defendant did not receive more than it would have in a Chapter 7

proceeding; (iv) the Defendant provided new value to the Debtor; and (v) the Debtor is not entitled

to prejudgment interest.  The Debtor filed its response contending that: (i) the Defendant did not

attain secured creditor status due to its pre-petition levy on the Debtor's accounts; (ii) the Defendant

wrongly overemphasizes the pre-petition levy to indicate that the Debtor lost its interest in the

accounts; (iii) the Defendant's belief that it provided new value in exchange for a release of the lien

on the Debtor's account is misplaced; and (iv) the Debtor is entitled to interest in a straightforward

preference action.

For the foregoing reasons, the Debtor's motion for summary judgment is granted, and the

Defendant's cross-motion for summary judgment is denied.  The Court has jurisdiction over this

motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States

3

District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (F). Venue is proper under 28 U.S.C. §§ 1408 and

1409. The following shall constitute the Court's findings of fact and conclusions of law as required

by Federal Rule of Bankruptcy Procedure 7052.

<u>**Statement of Facts and Procedural History**</u>

**A.      Debtor's Statement of Facts**

Barnert Hospital and Onward Healthcare, Inc. began their business relationship when

Onward acquired Health Staff Professions, Inc. and All Care Nursing Services, the two entities that

provide nursing professionals to the Debtor. *Debtor's Mot. for Summ. J. ("Debtor's Mot.")*, at 2.

On January 19, 2007, Onward commenced an action in the Superior Court of New Jersey, Camden

County, Law Division captioned *Onward Healthcare, Inc. v. Barnert Hospital*, Docket No. L-477-

07 ("State Court Complaint"), alleging breach of contract for unpaid invoices, attorneys' fees, and

interest. *See Aff. of Joseph Lubertazzi, Jr. in Supp. of the Pl.'s Mot. for Summ. J. to Recover a*

*Preferential Transfer of Funds ("Lubertazzi Aff.")*, at ¶2, Exhibit A. A table attached to the State

Court Complaint alleged ninety-six (96) unpaid invoices dating from April 28, 2004 to June 18,

2006 totaling $367,850.38 ("Invoices"). *Debtor's Mot.* at 2. Onward sought a total judgment in the

amount of $441,420.46 for the outstanding amounts due, interest and attorneys' fees. *Id.* at 2-3.

Barnert Hospital did not answer the State Court Complaint. *Id.* at 3. On March 8, 2007, the

Defendant filed a request to enter default and, on April 10, 2007, the state court entered a Default

Judgment in the amount of $451,009.89 against Barnert Hospital. *See Lubertazzi Aff.*, at Exhibits

B & C. On June 1, 2007, the Defendant recorded its Default Judgment and, on June 15, 2007,

delivered a Writ of Execution to the Sheriff of Passaic County. *Debtor's Mot.* at 3. On June 20,

2007, the Passaic County Sheriff levied upon Barnert Hospital's personalty and bank account at Columbia Savings Bank ("Bank Account"). *Id.*; *Lubertazzi Aff.* at ¶5, Exhibit D.  At the time of the Sheriff's levy, the account contained $466,409.58.  *Debtor's Mot.* at 3.

Onward filed a Motion for Turnover of Funds on June 22, 2007 in the Superior Court.  *Id.* Barnert Hospital opposed the motion and filed a Cross-Motion to Vacate the Default, Default Judgment, and Levy. *Id.* The parties entered into a Consent Order on July 20, 2007, which provided "that the Default Judgment was vacated, that upon presentation of a copy of the Consent Order, Columbia Savings Bank 'shall wire to Onward $192,398.69 from Barnert Hospital's bank account #02-4216696, at which time the levies on Barnert Hospital's personalty and Bank Account would be vacated." *Id.*; *see Lubertazzi Aff.* at ¶6, Exhibit E.  That same day, the Consent Order was presented to Columbia Savings Bank and the wire transfer was effectuated to Onward from the Bank Account. *Debtor's Mot.* at 4.

**B.    Defendant's Statement of Undisputed and Additional Facts**

The Defendant does not dispute the chronology of the events in the state court action that resulted in the Default Judgment being entered and the Sheriff levying the Bank Account at Columbia Savings Bank ("Bank Levy").  *See Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Motion for Summ. J. ("Defs. Mot.")*, at 2; *Certification of Michael E. Brown ("Brown Cert."),* at Exhibit C.

On July 20, 2007, upon the parties having reached agreement, the state court entered a Consent Order between the parties resolving the Defendant's motion for turnover of funds and providing the following in relevant part:

> 1.    The Default Judgment entered against the Hospital is hereby vacated. The Default against the Hospital remains in effect.

5

2.      Upon presentation of a copy of this Consent Order, Columbia Savings Banks shall wire to Plaintiff [Onward] $192,398.69 from the Hospital's levied bank account #02-4216696. . . .

3.      Upon wire of the funds stated in paragraph 2, the levy on bank account #02-4216696 at Columbia Savings Bank and the levy on the Hospital's personalty located at 680 Broadway, Paterson, New Jersey is hereby vacated. . . .
. . . .

5.      The Plaintiff's Motion for Turnover is hereby DENIED.
. . . .

7.      In addition to the funds stated within paragraph 2, the Hospital shall pay to Plaintiff [Onward], with TIME BEING OF THE ESSENCE, monthly payments in the amount of $25,351.43. . . . The first Monthly Payment by the Hospital shall be due on August 15, 2007 and the Monthly Payments shall continue to be due thereafter on the 15th of each month through the final payment on March 15, 2008. The Hospital shall not be liable for any prepayment fee in connection with the Monthly Payments.

*Id.* at Exhibit E.; *Def's Mot.* at 3. That same day, Columbia Savings Bank wired $192,398.69 to Onward ("Wire Transfer") and Onward released and vacated the Bank and Hospital Levies. *Def's. Mot.* at 3. Upon such release, Barnert Hospital received $274.010.89, which were the remaining funds in the Bank Account. *Id.* On August 15, 2007, the date on which the first Monthly Payment was due pursuant to the Consent Order, Barnert Hospital filed its bankruptcy petition. *Id.* at 4. The Debtor filed this adversary proceeding soon thereafter.

## Discussion

### A.     Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

6

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of

the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."

*Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable

to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569,

578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion.

Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v.*

*Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material

fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The burden then shifts to the non-moving party to "'make a showing sufficient to establish the

existence of [every] element essential to the party's case, and on which that party will bear the

burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned

on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*,

477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could

return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined

by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing

*Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under

governing law. *Id.*

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23.

Local Civil Rule 56.1 requires each side to "furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. Failure to file this statement is grounds for denial alone. *See In re Mercedes-Benz Antitrust Litig.*, 364 F. Supp. 2d 468, 471-75 (D.N.J. 2005); *Comose v. N.J. Transit Rail Operations, Inc.*, 2000 U.S. Dist. LEXIS 20790, at *4 (D.N.J. Oct. 6, 2000). However, if there is no evidence of bad faith, then it is within the court's discretion to overlook such failure and to decide the motion on the merits. *See Rosenberg v. JCA Assocs.*, 2007 U.S. Dist. LEXIS 23570, at *31-32 (D.N.J. Mar. 30, 2007). Although both parties to the instant motions failed to comply with Local Civil Rule 56.1, they did provide orderly recitations of the facts at hand in their briefs, therefore, this Court will exercise its discretion and will decide the motion. *See Kee v. Camden County*, 2007 U.S. Dist. LEXIS 23637, at *16 (D.N.J. March 30, 2007) ("[T]he Court, having found no evidence of bad faith, concludes that both parties were equally lax in their compliance with the Local Civil Rules, . . . and the Court [finds] it in the best interest of the parties and justice to adjudicate Defendant's motion.").

8

**B.**    **Avoidance of Preferential Transfer Pursuant to Section 547(b)**

The third count of the Debtor's amended complaint alleges, notwithstanding section 553, that

if a right of setoff exists or if a setoff has already occurred, the transfer is avoidable pursuant to

section 547 of the Bankruptcy Code.  Section 547(b) provides:

> Except as provided in subsections (c) or (i) of this section, the trustee
> may avoid any transfer of an interest of the debtor in property —
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the
>> debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made—
>>> (A) on or within 90 days before the filing of the
>>> petition; or
>>> (B) between ninety days and one year before the date
>>> of the filing of the petition, if such creditor at the time
>>> of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such
>> creditor would receive if—
>>> (A) the case were a case under Chapter 7 of this title
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the
>>> extent provided by the provisions of this title.

11 U.S.C. § 547(b) (2007).  The purpose of the section 547 avoidance power is "to foster equality

of treatment among creditors and to discourage creditors from incapacitating a firm by racing to

attach its assets shortly before bankruptcy." *Trustee v. Mappa (In re Pineview Care Ctr., Inc.)*, 152

B.R. 703, 705 (D.N.J. 1993) (citation omitted).  Pursuant to section 547(g), the trustee or the debtor

in possession bears the burden of proving the avoidability of a transfer under section 547(b) by a

preponderance of the evidence. *See* 11 U.S.C. § 547(g) (2007); *Lease-a-Fleet, Inc. v. Wolk, (In re*

*Lease-a-Fleet, Inc.)*, 151 B.R. 341, 349 (Bankr. E.D. Pa. 1993); *Aspen Data Graphics, Inc. v.*

*Boulton (In re Aspen Data Graphics, Inc.)*, 109 B.R. 677, 681 (Bankr. E.D. Pa. 1990).  The parties

do not dispute that the debtor was insolvent, that the purported transfer occurred within ninety (90)

days of the petition date, and the transfer was for the benefit of a creditor.  However, the contested

elements of the Debtor's section 547(b) claim are addressed below.

### 1.        Transfer of an Interest of the Debtor in Property

Section 547(b) of the Bankruptcy Code allows the debtor in possession to avoid certain

transfers of debtor's interest in property made during the applicable preference period.  11 U.S.C.

§ 547(b).  Section 101(54)(D) provides that "each mode, direct or indirect, absolute or conditional,

voluntary or involuntary, of disposing of or parting with (i) property or (ii) an interest in property"

constitutes a "transfer" under the Bankruptcy Code.  11 U.S.C. § 101(D) (2007).  Thus, in

determining whether a preferential transfer has occurred, the Court must first make a determination

as to whether the property transferred by the Debtor was property in which the Debtor possessed an

interest.

Onward argues that the issuance of the Bank Levy caused the Debtor to lose all interest in

the funds in the Bank Account.  *Def.'s Motion* at 8.  Consequently, Onward argues that the

$192,398.69 transferred by the Debtor to Onward from the Bank Account could not have been a

transfer of "an interest of the debtor in property," and, therefore, the Wire Transfer was not a

preferential transfer voidable by the Trustee under section 547(b).  *Id.* at 5.

 In arguing this position, Onward relies upon *United States v. Whiting Pools, Inc.,* 462 U.S.

198 (1983), and *In re Smiley*, 189 B.R. 338 (Bankr. E.D. Pa. 1995).  *Def.'s Motion* at 6-7.  Neither

is determinative here.  *Whiting Pools* involved a pre-petition IRS levy upon tangible personal

property of the debtor, which is substantively different from a bank account levy effectuated by a

common creditor.  *Whiting Pools,* 462 U.S. at 200.  Furthermore, the Court in *Whiting Pools* held

that the debtor's interest had *not* been extinguished by the levy, and that the property, therefore,

constituted "property of the estate."  *Id.* at 209-10.  Onward's sole reliance upon *Whiting Pools* is

10

based upon a footnote in which the Court merely acknowledged that there might be situations in which a levy could effectively transfer ownership of property, such that the property levied upon would not become property of the estate. *Id.* at 210 n.18. There is nothing in the Court's opinion to suggest that the Court contemplated a routine pre-petition non-IRS levy made during the preference period to be such a situation.

*Smiley* also involved a pre-petition tax levy. *Smiley,* 189 B.R. at 339. Although the levy in *Smiley* was upon the debtor's bank account, *Smiley* is distinguishable from the instant case in several important respects. First, as in *Whiting Pools*, the levy at issue in *Smiley* was an IRS levy, which is "broader than anything known to the common law." *In re Thomas W. Garland, Inc.*, 39 B.R. 412, 416 (Bankr. D. Mo. 1984) (citation omitted). *See Whiting Pools*, 462 U.S. at 209-10 ("The enforcement provisions of the Internal Revenue Code . . . do grant to the Service powers to enforce its tax liens that are greater than those possessed by private secured creditors under state law.") (citations omitted). Second, the sole issue in *Smiley* was whether the IRS had violated the automatic stay in making a post-petition demand for turnover of the funds in the levied account. *Smiley*, 189 B.R. at 339. Although the court held that the funds were not property of the estate under section 341, it expressly stated that it was not deciding whether the levy was an avoidable preference under section 547 because the debtor failed to raise the issue. *Id.* at 341 n. 2.

Since the cases cited by Onward are inapplicable in the context of a non-IRS tax levy, the Court will rely upon the express language of the Bankruptcy Code and the guidance of other courts in determining whether the funds transferred to Onward pursuant to the Consent Order constituted a transfer of an "interest of the debtor in property" under section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b).

11

Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate is compromised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 547(a)(1) (2007). As courts have recognized, the scope of section 541(a)(1) is broad and includes any property made available to the estate by any other provisions of the Bankruptcy Code. *See Whiting Pools,* 462 U.S. at 205 (citing H.R. Rep. No. 95-595, at 367 (1977)). Several provisions in the Bankruptcy Code permit the trustee to recover property in which the debtor did not have a possessory interest when the bankruptcy petition was filed. *See, e.g.,* 11 U.S.C. §§ 543, 544, 547, 548; *Whiting Pools*, 462 U.S. at 203-206. Thus, the bankruptcy estate includes "those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308 (1991). *See Womack v. Houk (In re Bangert)*, 226 B.R. 892, 898 (Bankr. D. Mont. 1998) (holding that despite the debtor lacking physical control of funds in her bank account prior to the transfer, for the purposes of section 541 and section 547(b), the debtor and her estate retained an interest in the funds transferred).

Applying the foregoing to the Wire Transfer, the Court finds that for the purposes of sections 541 and 547(b), the Debtor and the bankruptcy estate retained an interest in the Bank Account prior to the Wire Transfer. Therefore, the $192,398.69 wired to Onward under the Consent Order constituted a "transfer of an interest of the debtor in property" under section 547(b). 11 U.S.C. § 547(b). Although the Debtor did not have control of the Bank Account at the date of the Wire Transfer, the Debtor nonetheless retained an interest under section 541 and section 547(b) because the levy depriving the Debtor of such control was executed within ninety (90) days of the Debtor's petition and constituted an avoidable preference under section 547(b) of the Bankruptcy Code.

2. **On Account of an Antecedent Debt**

The Debtor argues that the Wire Transfer constituted payment for the Invoices of April 28, 2004 to June 18, 2006, and, thus, was made on account of an antecedent debt. *Debtor's Motion* at 6. Onward argues that upon issuance of the Levy, the Debtor's obligations to Onward with respect to the Invoices were satisfied, and that there were no amounts due and owing to Onward before the Debtor made the allegedly preferential transfer. *Def.'s Motion* at 8-9.

The term "antecedent debt" is not defined in the Bankruptcy Code. However, the courts have held that a debt is 'antecedent' if incurred before the allegedly preferential transfer. *Jones Truck Lines, Inc. v. Cent. States (In re Jones Truck Lines)*, 130 F.3d 323, 329 (8th Cir. 1986). Furthermore, a debt is incurred on "the date upon which the debtor first becomes legally bound to pay." *Id.* "A later compromise of a claim does not affect the time when the debt first arose." *Upstairs Gallery, Inc. v. Macklowe West Dev. Co., L.P.* (*In re Upstairs Gallery*), 167 B.R. 915, 918 (B.A.P. 9th Cir. 1994).

Applying these principles, the Debtor first became legally obligated to pay Onward on the payment date specified on the Invoices. The Wire Transfer to Onward was clearly made in payment of this debt, and Onward's argument is without merit.

3. **Enabled Creditor to Receive More Than it Would Have Received Had the Case Been Filed Under Chapter 7 of the Code**

Section 547(b)(5) of the Bankruptcy Code provides that in order for a transfer of an interest of the Debtor in property to be avoidable, the transfer must enable the creditor to receive more than such creditor would receive if—

> (A)    the case were a case under chapter 7 of this title;
> (B)    the transfer had not been made; and
> (C)    such creditor received payment of such debt to the extent provided by the provisions of this title

13

11 U.S.C. § 547(b).

Onward argues that as a fully secured creditor, it did not receive more than it would have received in a Chapter 7 liquidation. *Def.'s Motion* at 14. While Onward is correct that payments to a fully secured creditor would not be preferential, it is incorrect in categorizing itself as a secured creditor. If the Court were to adopt Onward's reasoning, every creditor that acquired an avoidable security interest within the preference period and then released its security interest pursuant to a 'settlement agreement' entered into with the debtor, would be permitted to keep its payment to the detriment of other unsecured creditors. The debtor would, in effect, be granting certain favored creditors the right to retain part of a voidable preference, *i.e.*, the payment, which is contrary to the Bankruptcy Code's policy of equality among similarly situated creditors.

In support of its position, Onward relies upon *Lewis v. Diethorn*, 893 F.2d 648 (3d Cir. 1990). *Def.'s Motion* at 11-13. In *Lewis*, a home purchaser sued a home builder for defective workmanship and filed a *lis pendens* while the title was still held by the builder. *Lewis*, 893 F.2d at 649. The purchasers and builder reached a settlement agreement, in which the builder paid the purchasers $15,500 in exchange for the removal of the *lis pendens. Id.* The *Lewis* court found that the transfer had not been for an antecedent debt, but noted that even if the transfer had been made on account of an antecedent debt, it would have been in satisfaction of an equitable lien, which would have defeated the trustee's avoidance powers. *Id.* at 650.

Here, however, unlike the purchasers in *Lewis*, Onward would not have held an equitable lien which would trump the trustee's avoidance powers had the transfer not been made. Instead, Onward would have only held an avoidable levy, which, upon exercise of the trustee's avoidance powers, would have left Onward a general unsecured creditor. As the legislative history to section

14

547(b)(5) makes clear, the court is required to "focus on the allowability of the claim for which the preference was made." H.R. Rep. No. 95-595, at 372 (1977); S.Rep. No. 95-989, at 87 (1978). *See In re Joseph M. Eaton Builds, Inc.,* 84 B.R. 56, 48 n.1 (Bankr. W. D. Pa. 1988) (creditor stipulating that where payment was made in exchange for release of judgment lien, creditor received more than it would have in a Chapter 7 proceeding because the judgment lien was obtained within the 90 day preference period and therefore subject to the trustee's avoiding powers); *Hayes v. DMAC Invs., Inc. (In re RDM Sports Group, Inc.),* 250 B.R. 805, 815 (Bankr. N.D. Ga. 2000) (explaining that the general rule that payment to a fully secured creditor is not preferential "has no application if the creditor's claim of fully secured status is built on a security interest or lien in collateral that is avoided or could be avoided") (quoting David G. Epstein et al., *Bankruptcy* § 6-20, at 582 n.20 (1992)). Therefore, in determining what Onward would have received in a Chapter 7 proceeding had the Wire Transfer not been made, the Court must look to what the general unsecured creditors would have received in such a proceeding.

As reflected in the Debtor's schedules, the Debtor had assets of $46,600, 967 and liabilities of $61,303,505 as of the date of petition. *Pl.'s Summ. of Schedules, October 26, 2007.* Moreover, on November 20, 2008, the Debtor confirmed a Plan of Liquidation which, after payment of Administrative and Priority claims, will leave little if any funds available for general creditors. There is no doubt that Onward received more in the wire transfer than it would have in a Chapter 7 proceeding.

**C.    Contemporaneous Exchange for New Value**

Section 547(c)(1) of the Bankruptcy Code provides that the trustee may not avoid a transfer

to the extent that such transfer was intended by the debtor and creditor to be a contemporaneous

exchange for new value and was in fact a substantially contemporaneous exchange.   11 U.S.C.

§ 547(c)(1) (2007).   To prevail in a section 547(c)(1) defense, Onward must show that (1) it

provided 'new value' to the Debtor; (2) that the parties intended the exchange to be

contemporaneous; and (3) the exchanges were in fact contemporaneous.   *See Harbour v. ABX*

*Enters. (In re APS Holding Corp.)*, 282 B.R. 795, 800 (Bankr. D.Del. 2002).  New value is defined

in section 547(a)(2) as

> money or money's worth in goods, services, or new credit, or release
> by a transferee of property previously transferred to such transferee
> in a transaction that is neither void nor voidable by the debtor or the
> trustee under any applicable law, including proceeds of such
> property, but does not include an obligation substituted for an
> existing obligation.

11 U.S.C. § 547(a)(2) (2007).

The Debtor maintains that the Wire Transfer did not constitute a contemporaneous exchange

for new value because the purpose of the Wire Transfer was to satisfy its obligations with respect

to the Invoices.   *Debtor's Motion* at 8.   Onward argues that the Wire Transfer was not made to

satisfy the Invoices because they had already been satisfied via the Bank Levy, and that the transfer

was instead intended as consideration paid to Onward to vacate the Bank Levy and Final Judgment.

*Def.'s Motion* at 15.

Onward cites *In re Phoenix Steel Corp.*, *In re Rodman*, and *In re E.R. Fergert, Inc.* for

support that the release of a lien can constitute "new value" for purposes of section 547(c)(1).   *In*

*re  Phoenix Steel Corp.*, 76 B.R. 373 (Bankr. D. Del. 1987); *Kenan v. Fort Worth Pipe Co. (In re*

16

*Rodman)*, 792 F.2d 125 (10th Cir. 1986); *In re E.R. Fergert, Inc.*, 887 F.2d 955 (9th Cir. 1989).  In

*Phoenix Steel*, the debtor sought to set aside a payment made in exchange for the release of

equipment pursuant to a purchase order dated outside the preference period.  *Phoenix Steel*, 76 B.R.

at 374.  Although the payment was within the preference period, the creditor was deemed to hold

a perfected security interest in the collateral under Pennsylvania law.  *Id.* at 374-76.  Since the value

of the collateral substantially exceeded the amount owed to the creditor under the purchase order

agreement, the court held that the creditor did not receive more than it would have received in a

liquidation proceeding and the transaction was not a preference under section 547(b).  *Id.* at 374,

376.  The court also noted that the transaction would also be exempt from avoidance under section

547(c)(1) because the "relinquishment of an *inchoate lien right* constitutes 'new value' under the

Bankruptcy Code."  *Id.* at 376 (emphasis added).  Here, Onward did not possess an inchoate lien

right.  All Onward possessed was an avoidable lien.  *See Joseph Eaton Builds,* 84 B.R. at 58 n.1

("Because the judgment lien itself was obtained within the 90-day preference period, it is subject

to the Trustee's avoiding powers, as is the payment which was based upon that judgment").

*Rodman* is also not dispositive.  In *Kenan*, a supplier of the debtor had filed materialmen's

liens on a well of the debtor.  *Kenan*, 792 F.2d at 126.  Prior to filing for bankruptcy but within the

preference period, the debtor paid the supplier the amount owed to it in exchange for release of the

lien.  *Id.*  At the time of the adversary proceeding, the well no longer retained any value.  *Id.*  Both

parties agreed that the lien was valid and unavoidable; the sole issue was whether section 547(c)(1)

required a valuation of the transfer at the time of the adversary proceeding or at the time of payment.

*Id.*

Finally, Onward cites *Fergert* to support its assertion that "courts have consistently

recognized that the release of a security interest to the extent of a payment is a form of 'new value'

that a creditor may give in exchange for the debtor's payment". *Def.'s Motion* at 18.  In *Fergert*, the debtor was a contractor who had employed two subcontractors on a project.  *Fergert*, 887 F.2d at 956.  The subcontractors completed their work satisfactorily.  However, the debtor defaulted on his payments to both.  *Id.*  The subcontractors brought suit, but prior to trial, the debtor paid both subcontractors in full satisfaction of his debt.  *Id.*  Less than ninety (90) days later, the debtor filed bankruptcy under Chapter 11.  *Id.*  The trustee commenced an adversary proceeding against the subcontractors alleging that the payments to them constituted preferential transfers under section 547(b).  *Id.* at 957.

In the statement upon which Onward relies, the court merely notes that two other circuits have held that payments by a debtor in exchange for a *secured* creditor's release of its security interest falls with the exception of section 547(c)(1).  *Fergert*, 887 F.2d at 959.  As already discussed, Onward was not a secured creditor and did not hold a security interest within the meaning of section 547(c)(1) but rather possessed an avoidable preference.  In contrast, in *Fergert*, the court found that if the debtor had not made a transfer to the subcontractors, the debtor's surety would have been obligated to pay the subcontractors, and the surety would then have held an equitable lien against the debtor's retainage.  *Id.*  Thus, in making payment to the subcontractors, the debtor received 'new value' in the release of the unavoidable equitable lien that the surety otherwise would have held for that same amount.  *Id.*  The facts before this Court are very different.

While Onward is correct in its assertion that the release of a lien may constitute new value in certain circumstances, the cases upon which it relies do not provide support as to why the release of Onward's avoidable lien constituted 'new value' to the Debtor in these circumstances.  As stated, Onward did not have a valid lien upon the Debtor's Bank Account outside of the preference period.  All Onward had was a voidable preference under section 547(b) of the Bankruptcy Code.  It is

18

difficult to see how the release of a lien voidable by the Trustee in bankruptcy, could constitute 'new value' to the estate, since the lien was subject to avoidance in any event.  To be afforded a section 547(c)(1) defense, a transferee must show that the debtor's *bankruptcy estate* was materially augmented by the transfer.  *Reigle v. Mahajan (In re Kumar Bavishi & Assoc.)*, 906 F.2d 942, 950 (3d Cir. 1990).

Furthermore, even if Onward's release did somehow provide marginal 'new value' to the bankruptcy estate, the Third Circuit has held that a valid section 547(c)(1) defense requires more than the addition of *some* new value to the estate:

> If any amount of new value insulated a transfer from avoidance, then unsecured creditors could improve their position on the eve of bankruptcy merely by exchanging slightly lower interest rates or altered payment schedules for security on the loan.  Such a situation would dramatically hinder the goal of the preferential transfer rule. . . ."[I]f the debtor at the behest of such creditor so tries to change the position of such creditor in order to improve such creditor's lot in an anticipated bankruptcy . . . . [sic] the creditor must return any advantage so obtained."

*In re Spada*, 903 F.2d 971, 976 & 976 n.6 (3d Cir. 1990) (quoting T.H. Jackson, *The Logic and Limits of Bankruptcy Law* 130 (1996)).  The Third Circuit has held that section 547(c)(1) requires a material benefit or augmentation be provided to the estate.  *Reigle*, 906 F.2d at 910.

Applying the above principles to the case at hand, the Court finds that the Wire Transfer did not provide "new value" to the Debtor under section 547(c)(1) of the Bankruptcy Code.  As discussed, the value of the transfer must be viewed from the perspective of the bankruptcy estate rather than the pre-petition Debtor, and Onward's levy was avoidable itself.  It is therefore clear that the Wire Transfer depleted the Debtor's bankruptcy estate of $192,398.69 which it would have otherwise had but for the transfer.  With respect to what the estate received in return for the Wire Transfer, the Court need not ponder over whether it received some marginal benefit from the

exchange, as the Third Circuit has established that a material benefit must be provided. *Reigle*, 906

F.2d at 950. Here, it is clear that the release of avoidable liens did not materially augment the estate.

Onward has thus failed to establish a section 547(c)(1) defense to the Court's finding that the Wire

Transfer constitutes an avoidable preference under section 547(b) of the Bankruptcy Code.

**D.    Debtor's Entitlement to Interest**

The Debtor has asked the Court to award prejudgment interest at the postjudgment interest

rate from the date of the filing of the Complaint. *Debtor's Motion* at 8-9. Onward opposes this

request. *Def.'s Motion* at 19.

There is no specific provision in the Bankruptcy Code or the Bankruptcy Rules that entitles

a successful trustee in a preference action to interest. However, the courts have found that section

550(a) gives the Court the authority to make such an award. Section 550(a) provides:

> Except as otherwise provided in this section, to the extent that a
> transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or
> 724(a) of this title, the trustee may recover, for the benefit of the
> estate, the property transferred, or, if the court so orders, the value of
> such property, from—
>> (1)    the initial transferee of such transfer or the entity
>>         for whose benefit such transfer was made; or
>> (2)    any immediate or mediate transferee of such initial
>>         transferee

11 U.S.C. § 550(a) (2007).

Specifically, courts have held that the reference to the "value" of the transferred property

authorizes an interest award. If the preferential transfer had been in the possession of the debtor's

estate rather than in the possession of the transferee, the debtor's estate would have been able to earn

interest on those funds. *Strauss v. Milwaukee Cheese Wis. (In re Milwaukee Cheese Wis.)*, 112 F.3d

845, 849 (7th Cir. 1997). Thus, prejudgment interest is required to fully return the value of the

transferred property to the bankruptcy estate. *See, e.g. Hechinger Inv. Co. of Del., Inc. v. Universal*

20

*Forest Prods. (In re Hechinger Inv. Co. of Del., Inc.)*, 489 F.3d 568, 579-80 (3d Cir. 2007). Most courts have, therefore, found that awarding prejudgment interest in a preference action furthers the congressional policies of the Bankruptcy Code. *Peltz v. Worldnet Corp. (In re USN Communs., Inc.)*, 280 B.R. 573, 602 (Bankr. D. Del. 2002).

The decision whether to award prejudgment interest is within the discretion of the Bankruptcy Court. However, the Third Circuit has held that "discretion must be exercised according to law, which means that prejudgment interest should be awarded unless there is a sound reason not to do so." *Hechinger*, 489 F.3d at 580 (quoting *Milwaukee Cheese*, 112 F.3d at 849).

Onward has not provided a "sound reason" why the Court should not award the Debtor prejudgment interest in the instant case. Onward only argues that requiring it to pay interest to the Debtor in addition to the returning the wired funds would be "unfair and unjust." *Def.'s Motion* at 19. As the Court has already determined that the Wire Transfer was an avoidable preference under section 547(b) of the Bankruptcy Code, requiring Onward to return the funds can neither be considered unjust nor constitute a "sound reason" why the Court should not award the Debtor prejudgment interest.

Accordingly, the Debtor will be awarded prejudgment interest from October 24, 2007, the date of the filing of the complaint, at the postjudgment interest rate.

21

## Conclusion

For the reasons set forth above, the Debtor's motion for summary judgment is granted, and the Defendant's motion for summary judgment is denied.  The Court will award the Debtor prejudgment interest at the postjudgment rate from the date of the filing of the complaint.


/s / *Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE


Dated: October 5, 2009